1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BRENDA KATE HAINES,

          Plaintiff,

   v.

HOME DEPOT U.S.A., Inc

          Defendant.

_____/

CASE NO. 1:10-cv-01763-SKO

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This matter is before the Court on Defendant Home Depot U.S.A., Inc.'s ("Defendant") motion for summary judgment.  Defendant moves for summary judgment on all claims asserted by Plaintiff Brenda Kate Haines ("Plaintiff") in this action: (1) premise liability and (2) negligence. Plaintiff has opposed the motion, and Defendant has filed a reply.  Upon careful consideration of the parties' submissions and the record in this case, Defendant's motion for summary judgment is GRANTED.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff alleges that while visiting a Home Depot store on June 19, 2008, a store employee named Sharon Mourett flashed a barcode laser scanner in Plaintiff's eyes. (Plaintiff's Opposition

1   Brief, (Doc. 43), p. 26-27; p. 28, ¶ 3.)[1]  As a result, Plaintiff sustained ocular injuries, which she

2   asserts four experts have opined were caused by the laser exposure.  (Doc. 43, p. 16:2-7; p. 26.)

3   Plaintiff asserts that Defendant failed to "correctly maintain and house the correct rugged industrial

4   lasers," the barcode laser scanners were "left out unattended," the scanners did  "did not appear to

5   have any safety lock mechanism or key lock," and, as a result, "any untrained person could

6   intentionally cause harm to someone."  (Doc. 43, p. 9, 26.)  According to Plaintiff, the failure to

7   maintain a locking mechanism on the barcode scanner was out of compliance with Occupational

8   Safety and Health Administration ("OSHA") guidelines.  (Doc. 43, p. 9-10.)  Plaintiff claims that

9   Home Depot breached its duty to ensure a safe environment, and also failed to provide Plaintiff with

10  any emergency eye treatment following her injuries.  (Doc. 43, p. 10-11.)

11  **B.     Undisputed Material Facts[2]**

12          On June 19, 2008, Plaintiff visited a Home Depot store located in Hanford, California, with

13  her mother.  (Defendant's Separate Statement of Undisputed Material Facts ("DUMF"), ¶ 3 (Doc.

14  35-2)).  While walking around the store, several unidentified women, who were not Home Depot

15  employees, inadvertently "hit" Plaintiff with a scanner.  (DUMF ¶ 9.)  Plaintiff then proceeded to

16  sit at a table at the back of the store with her mother.  (DUMF ¶ 4.)  While she was seated, Plaintiff

17  noticed two "very large looking laser-like devices sitting out" that were connected to a computer.

18  (DUMF, ¶ 5.)  According to Plaintiff, these were "rugged industrial" or "Class 3" barcode scanners.

19  (DUMF ¶ 6.)  Plaintiff noticed a Home Depot employee behind a counter, whose name appeared to

20  be Kate Howard ("Kate").[3]  (DUMF ¶ 7.)  While Plaintiff was seated, Kate used the barcode scanner

21  to hit Plaintiff's left and right eyes with the laser.  (DUMF ¶ 8.)  Plaintiff turned away to avoid injury,

22  and when Plaintiff reached forward to push the laser barcode scanner away, Kate stopped.  (DUMF,

23

24          [1] For ease of reference, all citations to page numbers correspond to the page numbers assigned by CM/ECF at

25  the top margin of each filed document.

26          [2] For purposes of this motion, Defendant does not dispute Plaintiff's factual allegations regarding the events that

27  took place at the Home Depot store on June 19, 2008, nor does Defendant dispute that Plaintiff has diagnosed eye
    conditions.

28          [3] Plaintiff does not dispute this statement; however, in her opposition, Plaintiff refers to this employee as
    "Sharon Mourett."  (*See* Doc. 43, p. 9:13-15.)

¶ 8.)  Upon exposure to the laser from the barcode scanner, Plaintiff's eyes began to burn and felt very dried out, her eyelids were cracked and irritated, and she experienced light sensitivity.[4] (DUMF, ¶¶ 10, 11.)

After leaving the Home Depot store, Plaintiff visited Dr. Segerstrom at the emergency room at Corcoran District Hospital.  (DUMF, ¶ 14.)  Dr. Segerstrom noted that Plaintiff did not suffer any "globe trauma" (DUMF, ¶ 15) and Plaintiff's eyelids, conjunctiva, sclera, corneas, pupils, and anterior chambers were normal upon inspection (DUMF, ¶ 16).[5]  The report stated that Plaintiff refused to allow Dr. Segerstrom to examine her eyes with fluorescein (DUMF, ¶ 17.)[6]   Dr. Segerstrom discharged Plaintiff later that same day with a prescription for drops and ointments, and advised Plaintiff to see an ophthalmologist for a "dilated exam."  (DUMF, ¶ 18.)

On July 7, 2008, Plaintiff's eyes were examined at Eye-Q Vision Care.  (DUMF, ¶ 19.)  The July 7, 2008, vision report noted that Plaintiff's eyelids, eyelashes, eyebrows, orbits, lacrimal glands, and irises were within normal limits.  (DUMF, ¶ 19.)[7]   The report indicated a history of laser exposure in the "Diagnosis" section.  (DUMF, ¶ 20.)

---

[4] In her opposition, Plaintiff asserts that she "did not notice that her eyes (eyelids) 'were cracked' at first."  (Doc. 43, p. 28, ¶ 10.)  Plaintiff, however, does not dispute that after she was exposed to the laser barcode scanner her eyelids felt "cracked."  Rather, Plaintiff maintains she did not *immediately* suffer this symptom.  Plaintiff does not dispute that she experienced cracked eyelids following the incident.  This fact is undisputed.

[5] Plaintiff objects to this fact asserting that she was prescribed drops and was advised to see a specialist.  (Doc. 43, p. 29, ¶ 16.)  Despite this objection, Plaintiff does not dispute that Dr. Segerstrom's report notes that Plaintiff's eyelids, conjunctiva, sclera, corneas, pupils, and anterior chambers were normal upon inspection.  (*See* Doc. 36, Exh., p. 56; Doc. 43, Exh. B, p. 42.)  Thus, this fact is undisputed.

[6] Plaintiff objects to this fact asserting that Dr. Segerstrom did not have the proper equipment to complete the fluorescein examination, that Dr. Segerstrom had informed Plaintiff that the drops used for the fluorescein test would burn, and that Dr. Segerstrom had mentioned that he would have difficulty performing the test without proper equipment.  (Doc. 43, p. 29, ¶ 17.)  Nevertheless, both Defendant and Plaintiff have provided Dr. Segerstrom's report which notes that Plaintiff "would not allow fluorescein."  Moreover, Plaintiff does not actually dispute that she refused to undergo the fluorescein test; she only provides the reasons why she elected not to undergo the test.  (Doc. 36, Exh. E; Doc. 43, Exh. B, p. 41.)  This fact is undisputed.

[7] Plaintiff objects to this statement asserting that the images taken of her eyes "tell a different story."  (Doc. 43, p. 29, ¶ 19.)  The report was submitted by both parties, however, and it notes that Plaintiff's eyelids, eyelashes, eyebrows, orbits, lacrimal glands, and irises were within normal limits.  (Doc. 36, Exh. F, p. 81; Doc. 43, Exh. C, p. 45.)  Plaintiff fails to adequately dispute the contents of the report and this fact is treated as undisputed.

A July 30, 2008, Eye-Q Vision Care records noted that Plaintiff had "mild symptoms" and "no significant corneal involvement."[8] (DUMF, ¶ 21.) The examination report also stated that the examining physician, Dr. Walker, assured Plaintiff that no permanent damage from a barcode scanner was evident in either eye. (DUMF, ¶ 22.)[9] The report also states that Plaintiff became "bel[l]igerent" during the appointment and asked Dr. Walker why he was "'reluctant to tell the truth about the laser damage.'" (DUMF, 23.)[10] The July 30, 2008, report indicates that Plaintiff was "very persistent that [her eye] irritation [was] from the laser" and Plaintiff insisted that there was "no safe laser." (DUMF, ¶ 24.)[11] Dr. Walker's July 30, 2008, report did not note any blisters on Plaintiff's eyes. (DUMF, ¶ 25.)[12] Although Plaintiff asserts that there is an "original report" from Dr. Walker, no such report has been produced. (DUMF, ¶ 26.)[13]

Plaintiff was referred to Dr. Schall by Plaintiff's former attorney. (DUMF, ¶ 27.) Dr. Schall provided a report that stated that Plaintiff's myopia was "not a result of the accident." (DUMF, ¶

---

[8] Plaintiff "objects to this diagnosis." (Doc. 43, p. 30, ¶ 21.) Plaintiff, however, provides no evidence to dispute that the report states she had "mild symptoms" and "no significant corneal involvement." (*See* Doc. 36, Exh. F, p. 79; Doc. 43, Exh. D, p. 49) This fact is treated as undisputed.

[9] Plaintiff argues that Dr. Walker acknowledged there was damage to Plaintiff's eyes, but Plaintiff concedes that Dr. Walker did not think the damage would be permanent. (Doc. 43, p. 30, ¶ 22.) The contents of Dr. Walker's report in this regard are undisputed.

[10] Plaintiff objects to Defendant's characterization of Dr. Walker's July 30, 2008, report. She asserts that she was disappointed when Dr. Walker refused to document that "he had mentioned to her that she had 'bullae' or small blisters on her eyes and eyelids." In her objection, Plaintiff maintains that she felt that "Dr. Walker may have played down her symptoms. Doctors can be incorrect, or play down symptoms." (Doc. 43, p. 30, ¶ 23.) Plaintiff's objection, however, does not dispute that the report in fact states that Plaintiff became belligerent during the appointment and asked why Dr. Walker was reluctant to tell the truth about the laser damage. Plaintiff's objection to this fact is essentially an objection to Dr. Walker's characterization of her statement to him in the July 30, 2008, report. The actual contents of the July 30, 2008, report are not disputed.

[11] Although Plaintiff objects to this fact, she does not adequately dispute the contents of the record. Rather, Plaintiff provides an explanation and context for her statements to Dr. Walker. (Doc. 43, p. 30-31, ¶¶ 23-24.) This fact is undisputed.

[12] Plaintiff objects that the report did not show blisters. (Doc. 43, p. 31, ¶ 25.) Plaintiff states that there are visible blisters along the inner part of her eyes which are visible in the photographs. Plaintiff notes that Dr. Walker prescribed drops and acknowledged injury related to a rugged industrial laser at Home Depot. Regardless of what Plaintiff asserts the images of her eyes show, she does not effectively dispute that Dr. Walker's report did not note blisters.

[13] Plaintiff objects to DUMF 26, but she does not actually dispute that she has never produced an "original" report from Dr. Walker. This fact is undisputed. (*See* Doc. 43, p. 31, ¶ 26.).

29.)[14]  Finally, Dr. Schall noted that "[i]t would be necessary to review records of an eye doctor prior to the accident to determine if the irritation and dry eye condition were present prior to the accident." (DUMF, ¶ 28.)[15]

Plaintiff alleges that her visual acuity decreased as a result of her exposure to the barcode scanner laser at Home Depot.  (DUMF, ¶ 12), but she has been unable to acquire a pre-accident eye report from Dr. Valdez that Plaintiff contends shows her vision was 20/25 and 20/40 "a couple of months before" the accident (DUMF, ¶ 13).[16]

**C.    Procedural Background**

Plaintiff filed suit against Defendant in Kings County Superior Court on June 9, 2010, seeking $25,000,000.00 in damages.  Plaintiff filed a First Amended Complaint ("FAC") on July 7, 2010, stating that Defendant left "rugged industrial bar code lasers" unattended in its store in violation of OSHA safety standards.  Defendant subsequently removed the matter to this Court.  The parties proceeded through discovery, which closed on December 30, 2011.

On December 29, 2011, Defendant filed a motion for summary judgment.  (Doc. 35.)  The hearing on the motion was originally set for February 1, 2012.  On January 13, 2012, Defendant re-noticed the hearing for February 15, 2012.  (Doc. 40.)  On January 20, 2012, Plaintiff filed a motion to continue the hearing to procure additional evidence in support of her opposition to the motion. (Doc. 41.)  Plaintiff's motion for a continuance was construed as a motion pursuant to Federal Rule of Civil Procedure 56(d), and was denied without prejudice.  Plaintiff was provided with a notice regarding the requirements for filing a Rule 56(d) motion and opposing a motion for summary judgment.  (Doc. 42.)  The hearing on Defendant's motion for summary judgment was continued to March 7, 2012, to allow Plaintiff additional time to renew her Rule 56(d) motion and file an

---

[14] Plaintiff disputes how Dr. Schall's opinion should be evaluated, but she does not actually dispute the contents of the report.  (Doc. 43, p. 31-32, ¶ 28.)

[15] Plaintiff disputes how Dr. Schall's opinion should be evaluated as it relates to causation of Plaintiff's eye conditions, but there is no dispute as to the actual contents of the report.  (Doc. 43, p. 32, ¶ 29.)

[16] The parties dispute whether Plaintiff in fact suffered a decrease in visual acuity following the incident, but Defendant does not dispute that Plaintiff *alleged* a decrease in her visual acuity.  Plaintiff does not dispute that she has been unable to acquire Dr. Valdez' pre-accident report showing her visual acuity prior to June 19, 2008.  (Doc. 43, p. 28-29, ¶ 13.)

opposition to the motion for summary judgment.  On January 24, 2012,  the same day that the Court issued the order denying Plaintiff's request for a continuance, Plaintiff filed a "Statement of Facts in Opposition" to Defendant's motion for summary judgment.  (Doc. 43.)  On February 6, 2012, Defendant filed a reply.

On February 22, 2012, Plaintiff filed another request to continue the hearing on Defendant's motion for summary judgment because her computer had been stolen and she was having difficulty obtaining copies of documents with which to supplement her opposition.  (Doc. 47.)   The Court granted a brief continuance of the hearing on Defendant's motion, noting that Plaintiff's January 24, 2012, opposition was filed before Plaintiff was provided the information as to the requirements for opposing a motion for summary judgment or filing a Rule 56(d) motion for a continuance.  As a result, Plaintiff was permitted an opportunity to file additional documents to supplement her opposition on or before March 7, 2012.  The hearing on Defendant's motion for summary judgment was continued until March 21, 2012.  (Doc. 48.)  Plaintiff did not file a supplemental opposition or submit any additional documents in support of her opposition to Defendant's motion.

After having reviewed the parties' briefs and all the supporting materials, the matter was found suitable for decision without a hearing and it was taken under submission.  It is Defendant's motion for summary judgment that is currently pending before the Court.

### III.   LEGAL STANDARDS

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A material fact is one which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id.*

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).  A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and entitles the moving party to summary judgment.  *Celotex*, 477 U.S. at 323.

If the movant has satisfied its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).  The nonmoving party must go beyond the allegations set forth in its pleadings. *See* Fed. R. Civ. P. 56(c).  "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929.  Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984; *see also Anderson*, 475 U.S. at 255.  Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.*  Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV.   DISCUSSION

**A.   Defendant's Requests for Judicial Notice is Denied in Part, Granted in Part**

Defendant requests that the Court take judicial notice of Plaintiff's original and amended complaints.  (Doc. 35-6.)  Plaintiff's original complaint is contained on the docket in this action (*see* Doc. 1, p. 8-13); thus the request to judicially notice the original complaint is unnecessary and is

DENIED as moot.  *See Ennis v. Mortg. Tree Lending, Inc.*, No. 2:08-cv-01301 GEB-EFB, 2009 WL 3642786, at * 1 n. 1 (E.D. Cal. Oct. 30, 2009) ("Since these documents are part of the docket in this action the motions for judicial notice were unnecessary and are [denied] as moot.")

Defendant also requests that the Court take judicial notice of Plaintiff's first amended complaint, which was filed in state court on July 7, 2010, prior to removal to this Court.  Plaintiff does not oppose Defendant's request for judicial notice of this document.  As this document should have been filed with the Court at the time of removal and because it is a pleading on file in another tribunal, it is subject to judicial notice.  *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (courts may take judicial notice of the docket in related cases as materials from a proceeding in another tribunal are appropriate for judicial notice).  Defendant's request for judicial notice of Plaintiff's First Amended Complaint pursuant to Federal Rule of Evidence 201 is GRANTED.

**B.   Defendant's Evidentiary Objections are Sustained in Part, and Overruled in Part and Defendant's Motions to Strike Plaintiff's Evidence are Granted in Part, and Denied in Part**

"Before ordering summary judgment in a case, a district court must . . . rule on evidentiary objections that are material to its ruling."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).  An evidentiary objection is material to the district court's ruling if the court considered the evidence that was the subject of the objection.  *See id.*  Defendant made several evidentiary objections with regard to evidence Plaintiff submitted in support of her opposition to Defendant's motion.  These objections are considered in turn below.

**1.      Defendant's Objection No. 1 is OVERRULED; Motion to Strike is DENIED**

In its reply brief, Defendant objects to Plaintiff's Exhibit B  (*see* Doc. 43, p. 41-42), which contains medical records from Corcoran District Hospital dated June 19, 2008, that were submitted in support of Plaintiff's opposition to Defendant's motion for summary judgment.  Defendant contends that the records constitute hearsay pursuant to Federal Rule of Evidence 801 and are not properly authenticated.  Defendant argues that Plaintiff "has not produced any evidence to support a finding that Exhibit 'B' is what she claims it to be.  Furthermore, Exhibit B is an incomplete copy of Dr. Segerstrom's records."  (Doc. 45-3, p. 2.)

"Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a) (footnotes omitted)). "[D]ocuments authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 773-74 (internal quotation marks, citations, and footnote omitted).  The Ninth Circuit has "repeatedly held that 'documents which have not had a proper foundation laid to authenticate them cannot support [or defend] against a motion for summary judgment.'" *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). "Consequently, objections predicated upon Federal Rule of Evidence 901 ["Requirement of Authentication or Identification"] are appropriate in the context of a motion for summary judgment." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal 2006).

In *Orr*, however, the Ninth Circuit explained that the "inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility." *Id.* at 776.  The court held that, "when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity." *Id.*  The court recognized that, "when unauthenticated extracts of a document are submitted that do not readily indicate that they are parts of the same document authenticated by another party, the trial court is not required to deem them authentic." *Id.* at 776 n.16.

Here, Defendant is not actually challenging the authenticity of the medical records contained in Exhibit B to Plaintiff's opposition; rather, Defendant argues on purely procedural grounds that Plaintiff has failed to provide adequate authentication.  The documents contained in Plaintiff's Exhibit B were already submitted and authenticated by Defendant in support of its motion.  (*See* Doc. 35-4, ¶ 5; Doc. 36, Exhibit E, p. 48, 55-56.)  Pursuant to *Orr*, these documents have been authenticated for use by Plaintiff.  Further, these documents are subject to a hearsay exception.  *See* Fed. R. Evid. 803(6); *see also, e.g., United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) (medical

1   records are a "classic" exception to the hearsay rule).  As such, Defendant's objections to Plaintiff's

2   Exhibit B are OVERRULED and the motion to strike these documents is DENIED.

3        **2.      Defendant's Objection No. 2 is OVERRULED; Motion to Strike is DENIED**

4        Defendant objects to Plaintiff's Exhibit C which consist of three medical records from Eye-Q

5   Vision Care.  One page contains images of Plaintiff's eyes and the remaining two pages are

6   examination records.  (*See* Doc. 43, p. 44-46.)  The two pages of examination records are copies of

7   documents already submitted and authenticated by Defendant.  (Doc. 35-4, ¶ 6; Doc. 36, Exh. F).

8   Pursuant to *Orr*, the authenticity requirement as to these two pages is satisfied, and Defendant's

9   objection is OVERRULED.  Regarding the document containing images of Plaintiff's eyes, the Court

10  is not required to deem this record authentic because it is not a duplicate of the images already

11  authenticated by Defendant.  However, because Defendant is not actually challenging the authenticity

12  of the record and is making the objection on purely procedural grounds,[17] the Court has the discretion

13  to deem the document authentic.  *Orr*, 285 F.3d at 776 n. 16.  As such, Defendant's objection for lack

14  of authenticity is OVERRULED.

15       Finally, although Defendant objects to these documents as hearsay, the documents are subject

16  to a hearsay exception.  *See* Fed. R. Evid. 803(6).  Defendant's objection on the ground of hearsay

17  is OVERRULED.  Defendant's motion to strike these records is DENIED.

18       **3.      Defendant's Objection No. 3 is OVERRULED; Motion to Strike is DENIED**

19       Defendant objects to Plaintiff's Exhibit D (*see* Doc. 43, p. 48-49) asserting that Plaintiff

20  failed to provide adequate authentication and the information in the documents constitutes hearsay.

21  Plaintiff's Exhibit D contains two pages of records from Eye-Q Vision.  These documents, however,

22  were also submitted in support of Defendant's motion for summary judgment and have been properly

23  authenticated.  (Doc. 36, Exh. E, p. 78-79.)  As explained above, the documents are authenticated

24  and are subject to a hearsay exception.  Defendant's objections to Plaintiff's Exhibit D as hearsay and

25

26          [17] Notably, Defendant subpoenaed all Plaintiff's medical records from Eye-Q Vision Care and it does not
    contend that the images submitted by Plaintiff were not part of the records Defendant received pursuant to the subpoena.
27  Defendant argues only that this document is not one that Defendant chose to authenticate and file in support of its motion.
    (*See* Doc. 45-3, p. 2:26-27 ("The unauthenticated photographs are different from the authenticated ocular photographs
28  from Eye-Q Vision that Home Depot submitted in support of its moving papers.").)

for lack of authentication are OVERRULED, and Defendant's motion to strike the documents is DENIED.

### 4.    Defendant's Objection No. 4 is SUSTAINED, Motion to Strike is GRANTED

Defendant objects to Exhibit E attached to Plaintiff's opposition to Defendant's motion for summary judgment. (*See* Doc. 43, Exh. E, p. 51.)  The document contained in Exhibit E is a print-out that appears to be a blog entry copied from an insurance website, http://www.metriskadivsory.com.   Defendant argues that the print-out is irrelevant, lacks authentication, constitutes hearsay, and confuses the issues.

In considering internet print-outs, courts have considered the "distinctive characteristics" of the website in determining whether a document is sufficiently authenticated.  *See, e.g., Premier Nutrition, Inc. v. Organic Food Bar, Inc.,* No. SACV 06-0827 AG (RNBx), 2008 WL 1913163, at *6 (C.D. Cal. Mar. 27, 2008); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1153-54 (C.D. Cal. 2002).  For example, courts have considered website print-outs sufficiently authenticated where the proponent declared that they were true and correct copies of pages on the internet and the print-outs included their webpage URL address and the dates printed.  *See Perfect 10, Inc.*, 213 F. Supp. 2d at 1154.  Here, the article Plaintiff submitted contains insufficient indicia of authenticity, specifically there is no person who attests to the accuracy of the print-out.  *Internet Specialties West, Inc. v. ISPWest*, No. CV 05-3296 FMC AJWX, 2006 WL 4568796, at *2 (C.D. Cal. Sept. 19, 2006) (stating that "[t]o be authenticated, someone with [personal] knowledge of the accuracy of the contents of the internet printouts must testify.").  As such, the internet print-out has not been authenticated.

Defendant also asserts that the print-out is irrelevant to the issue of causation, which is the material issue presented in the motion for summary judgment.  As Defendant notes, the print-out relates to OSHA violations purportedly reported at a Home Dept store in San Antonio, Texas.  This internet print-out has no relevance to the events at the Hanford Home Depot store and does not bear on the issue of the cause of Plaintiff's eye conditions. Fed. R. Evid. 401, 402.  Defendant's objection to Plaintiff's Exhibit E is SUSTAINED because the document is not properly authenticated and it lacks relevance.  Defendant's motion to strike Exhibit E is GRANTED.

1    **5.      Defendant's Objection No. 5 is OVERRULED; Motion to Strike is DENIED**

2        Defendant objects to Plaintiff's Exhibit F (Doc. 43, p. 53-56) attached to Plaintiff's opposition

3    on grounds that the document has not been properly authenticated and its contents constitute hearsay.

4    The document contained in Plaintiff's Exhibit F is a letter from Dr. Stephen Schall reporting his

5    examination findings.  This document was submitted in support of Defendant's motion for summary

6    judgment and was properly authenticated by Defendant. (*See* Doc. 36, Exh. G, p. 96, 111-15.)  Thus,

7    it has been authenticated for use by Plaintiff.  This document is also subject to a hearsay exception.

8    *See* Fed. R. Evid. 803(6).  As such, Defendant's objections to Plaintiff's Exhibit F are OVERRULED,

9    and Defendant's motion to strike is DENIED.

10   **6.      Defendant's Objection No. 6 is SUSTAINED; Motion to Strike is Granted**

11       Defendant objects to Plaintiff's Exhibit G attached to Plaintiff's opposition on the grounds

12   that the document is irrelevant, lacks authentication, constitutes hearsay, and it confuses the issues.

13   Plaintiff's Exhibit G purports to be a "news release" from the U.S. Department of Labor, Office of

14   Public Affairs.  (Doc. 43, Exhibit G, p. 58.)  The print-out was issued on December 1, 2010, and

15   reports that a San Antonio, Texas, Home Depot store was inspected by OSHA where it was

16   determined that an employee had sustained chemical burns due to a lack of appropriate equipment

17   and training for protective equipment.

18       The authentication and identification of evidence is governed by Federal Rule of Evidence

19   901. Rule 902 relates to documents said to be "self-authenticating."  Federal courts consider records

20   from government websites to be self-authenticating under Rule 902(5).  *See, e.g., Estate of Gonzales*

21   *v. Hickman*, No. ED CV 05-660 MMM (Rcx), 2007 WL 3237727, at *2 n.3 (C.D. Cal. May 30,

22   2007) (finding report issued by the Inspector General of the State of California on the Office of the

23   Inspector General's website to be self-authentic); *see also United States ex rel. Parikh v. Premera*

24   *Blue Cross*, No. C01-01476P, 2006 WL 2841998, at *4) (W.D. Wash. Sept. 29, 2006) (determining

25   documents found on government websites to be self-authenticating).

26       Nevertheless, the news release at issue here cannot be held to be self-authenticating.  It does

27   not contain a complete website URL address or other identifying information.  More importantly,

28   the fragment of the URL address that is included indicates that the document was not obtained from

12

the Department of Labor's webpage, but rather from an email account.  The printout is also incomplete as the one page contained in the exhibit states that it is page one of two pages.  Under these circumstances, the report is not self-authenticating and has otherwise not been properly authenticated.

Further, even if this print-out could be authenticated, it is not relevant to the issues in this case.  As noted by the Defendant, the news release relates to a different Home Depot store, the events reported in the "news release" have nothing to do with a laser barcode scanner, and nothing in the "news release" has any significance to the causation issue presented by Defendant's motion for summary judgment.  Moreover, the Court cannot locate any part of Plaintiff's opposition that cites or references this report.  The print-out is irrelevant and extraneous to the issue presented and is not discussed or relied upon by Plaintiff in any event.  As such, Defendant's objection is SUSTAINED and Defendant's motion to strike is GRANTED.

### 7.    Defendant's Objection No. 7 is SUSTAINED; Motion to Strike is GRANTED

Defendant objects to and moves to strike all references in Plaintiff's opposition papers to documents that she has failed to produce, e.g., a "missing" Eye-Q report.  While it has been held that "a party does not necessarily have to produce evidence in a form that would be admissible at trial [to survive a summary judgment]," its evidence must nonetheless satisfy the requirements of Rule 56 of the Federal Rules of Civil Procedure.  *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Indeed, Rule 56 "requires that documents relied upon in an affidavit presented in a summary judgment motion or opposition thereto to be attached to the affidavit."  *School Dist. No. 1J, Multnomah Cnty. Or. v. AcandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993).

Although Defendant does not cite particular places in Plaintiff's opposition that reference missing records, there are two such instances where Plaintiff objects to Defendant's statement of undisputed material facts on the basis of missing evidence.  First, Plaintiff objected to Defendant's statement that "Plaintiff has been unable to acquire Dr. Valdez's pre-accident report that allegedly

shows her vision was '20/20, 20/30' 'a couple months before' the accident.'" (DUMF, ¶ 13.) Plaintiff responded that she "attempted to acquire ocular/eye exam records, for no reason [the] clinic was unable to locate them." (Doc. 43, p. 28-29, ¶ 13.) Plaintiff otherwise agreed with Defendant's statement.  As noted above, Plaintiff has failed to adequately dispute the fact that she has been unable to acquire a pre-accident report from Dr. Valdez, and ultimately agreed with Defendant's statement that she has not produced the report.  Without reference to any evidence in support of her argument that such a report exists, Defendant's objection is SUSTAINED and Plaintiff's statement in this regard is STRICKEN.

Plaintiff also referred to missing records, purportedly from Dr. Walker, in objecting to Defendant's statement of undisputed material fact that "Plaintiff has failed to produce Dr. Walker's purported 'original report.'" (DUMF, ¶ 26.)  Plaintiff objected to this statement noting that she "had trouble[] locating original document. Gale Sedewich CMS a copy." (Doc. 43, p. 31, ¶ 26.)  As noted above, Plaintiff ultimately concedes that she has been unable to locate an "original report" from Dr. Walker or obtain any evidence that such an "original report" ever existed in the first place. Accordingly, Defendant's objection is SUSTAINED and the statement is STRICKEN.

**C.   Defendant's Argument in Support of its Motion for Summary Judgment**

Defendant asserts that, under California law, to prove claims for negligence and premise liability, Plaintiff must establish to a reasonable medical probability that Plaintiff's eye conditions were caused by the laser exposure she alleges she suffered at Home Depot.  (Doc. 35-1, 13:3-11.) Defendant contends there is no genuine issue of material fact regarding causation because (1) Plaintiff does not have sufficient evidence to carry her ultimate burden at trial and (2) Defendant can establish evidence that negates causation.  (Doc. 35-1, 15:14-18.)

As to Defendant's assertion that Plaintiff cannot carry her ultimate burden on causation at trial, Defendant contends that Plaintiff's only evidence consists of speculative medical reports and alleged off-the-record conversations.  Specifically, Defendant argues that Plaintiff's causation evidence amounts to the following: (1) her claim that her visual acuity has decreased since the accident; (2) a reference to "possible" laser keratitis in Dr. Segerstrom's emergency room report; (3) a reference to "history of laser exposure" in the Eye-Q report dated July 7, 2008; (4) an allegation

1    of a secret report by Eye-Q's Dr. Walker and an alleged off-the-record conversation that Dr. Walker

2    refused to document when Dr. Walker told her she had blisters on her eyes; and (5) Dr. Scall's

3    reference to a "history of laser exposure," and his assertion that Plaintiff's chronic conjunctivitis, dry

4    eye condition, and photophobia were "related to the accident"; and (6) an allegation that Plaintiff

5    began experiencing ocular distress immediately after laser exposure.  (Doc. 35-1, 10:21-11:4.)

6    Defendant argues that none of this evidence establishes to a reasonable medical probability that any

7    of Plaintiff's injuries were caused by laser exposure.

8         Defendant also argues that it has submitted expert medical testimony in support of its motion

9    for summary judgment that negates any causative link between Plaintiff's eye conditions and the laser

10   exposure she claims to have suffered.  (Doc. 35-1, 20:7-9).  Defendant has proffered the declaration

11   of Michael Reynard, M.D., who states that eye injury caused by laser exposure is detected by the

12   presence of thermal burns to the structure of the eyes.  Dr. Reynard reviewed Plaintiff's testimony

13   and medical records and concluded to a high degree of medical certainty that Plaintiff did not sustain

14   laser injury from a barcode scanner to either eye.  In light of Dr. Reynard's opinion and because none

15   of Plaintiff's medical evidence establishes causation to a reasonable medical probability, Defendant

16   is entitled to summary judgment.

17   **D.   Plaintiff's Argument in Opposition to Defendant's Motion**

18        Plaintiff argues that the reports of four eye doctors who examined her constitute evidence

19   establishing that her eye conditions were caused by laser exposure to a reasonable medical

20   probability.  Plaintiff contends that Drs. Segerstrom, Moors, Walker, and Schall each opined that her

21   eye conditions were caused by the laser exposure she sustained at the Home Depot store.  (Doc. 43,

22   15:9-15.)  Plaintiff objects to the testimony of Defendant's expert, Dr. Reynard, on the ground that

23   he did not examine or treat Plaintiff for her eye conditions.  (Doc. 43, 15:21-28.)  Plaintiff contends

24   that Defendant's motion should be denied because she has produced evidence to a reasonable medical

25   probability establishing that her eye injuries were caused by laser exposure.

26   ///

27   ///

28   ///

**E.      There Is No Triable Issue of Fact as to Causation**

    **1.      Plaintiff Must Establish Causation to Reasonable Medical Probability at Trial**

Plaintiff's complaint pleads two causes of action: negligence and premise liability.  Under California law, which supplies the rule of decision in this diversity action, "the well-know elements of any negligence cause of action [are] duty, breach of duty, proximate cause[,] and damages. [citations omitted]." *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614 (1998).  The elements for a premise liability actions are the same as that for negligence, i.e., duty, breach, causation, and damages.  *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001) ("In order to establish [premise] liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages.").

Causation is, therefore, an essential element of both claims, which must be proven to a reasonable medical certainty:

> The law is well-settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case . . . . A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.

*Jones v. Ortho Pharmaceutical Corp.*, 163 Cal. App. 3d 396, 402-03 (1985) (internal citations omitted); *Cottle v. Super. Ct.*, 3 Cal. App. 3th 1367 (1992).  Thus, Plaintiff bears the burden at trial to present competent evidence to a "reasonable  medical probability" that her injuries were caused by the laser exposure she suffered at the Home Depot store.  Such evidence cannot be conjectural given that the "mere possibility" of causation is insufficient to establish a prima facie case.  *See Jones*, 163 Cal. App. 3d at 402-03.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [citations omitted]. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

**2.    Plaintiff Lacks Evidence to Establish Causation to Reasonable Medical Probability**

Defendant asserts that Plaintiff has not produced any evidence to a "reasonable degree of medical probability" that her injuries were caused by laser exposure at Home Depot, and therefore cannot carry her burden of establishing causation at trial, and Defendant is entitled to summary judgment.

**a.    No Evidence of Decrease in Plaintiff's Visual Acuity**

Defendant argues that Plaintiff has no evidence to establish that her vision has deteriorated since the laser exposure. While Defendant does not dispute that Plaintiff's post-laser exposure visual acuity is 20/50 and 20/70, Defendant asserts that Plaintiff has failed to produce any evidence indicating that her pre-exposure visual acuity was superior to 20/50 and 20/70. Plaintiff claimed in her deposition that "a couple months before" the incident at Home Depot, Dr. Valdez determined her vision was 20/25 and 20/30, but she has been unable to acquire Dr. Valdez' pre-exposure visual acuity report because the "report seem[ed] to have disappeared."

Defendant asserts that, even assuming Plaintiff had evidence to show that her visual acuity has actually decreased since the laser exposure, even Dr. Schall, Plaintiff's own doctor, opined that Plaintiff's myopia was "not a result of the accident." According to Defendant, Plaintiff therefore has no evidence to show that a decrease in her visual acuity was caused by laser exposure at Home Depot.

Plaintiff does not dispute that she is unable to locate any evidence establishing her visual acuity before she was exposed to the laser. (DUMF, ¶ 13; Haines Depo., p. 44:21-23; Doc. 43, p. 28-29, ¶ 13.) Thus, any argument that Plaintiff has suffered a loss of visual acuity following the laser exposure is not supported by evidence. "Conclusory allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (conclusory allegation that documents subject to Freedom of Information Act disclosure had been destroyed or secreted by the government did not raise genuine issue for trial). Additionally, Plaintiff's references to missing evidence have been stricken; the Court cannot consider evidence that Plaintiff has not submitted. Further, as discussed below, even assuming Plaintiff suffered a loss of visual acuity since

17

1    exposure to a barcode scanner laser, there is no evidence rising to the level of a reasonable medical

2    probability that such an acuity loss was *caused by laser exposure*.  A decrease in Plaintiff's visual

3    acuity is not borne out by any evidence and does not create a triable issue of fact as to causation.

4                    **b.    Dr. Segerstrom's Report**

5          Plaintiff testified at her deposition that Dr. Segerstrom "acknowledged, and he put it in the

6    report that he can see [Plaintiff's] eyes were burned from a laser.  He attributed the incident to Home

7    Depot . . . he stated that [Plaintiff] had keratitis, inflammation, photophobia . . . ."  (Doc. 36, Exh.

8    C, p. 48:11-13, 23-24.)  Defendant argues that, contrary to Plaintiff's statement, Dr. Segerstrom's

9    report does not definitely state that a laser burned Plaintiff's eyes or that she was suffering from

10   keratitis.  Rather, Dr. Segerstrom noted "possible" laser  keratitis and "possible" injury from a laser

11   scanner for price scanning.  Additionally, Dr. Segerstrom's references to photophobia and the

12   "burning" in Plaintiff's eyes are not diagnoses, but were rather Dr. Segerstrom's summary of

13   Plaintiff's subjective complaints.

14         In her opposition, Plaintiff asserts that Dr. Segerstrom examined her eyes, but stated that "he

15   did not feel that he had all of the proper functioning equipment for the fluoroscene test."  (Doc. 43,

16   p. 11:19-22.)  According to Plaintiff, Dr. Segerstrom stated that Plaintiff "had been injured and

17   sustained an eye injury to both eyes at Home Depot."  (Doc. 43, 11:22-26.)  Plaintiff also asserts that

18   Dr. Segerstrom "mentioned a diagnosis of '[k]eratitis.'"  (Doc. 43, 11:24-27), and notes that Dr.

19   Segerstrom "mentions in his Dx (diagnosis) 'acute eye pain.'"

20         Under the "Clinical Impression" section of Dr. Segerstrom's examination and treatment

21   report, he noted "Laser Keratitis," circled it, and wrote in the word "possible."  (Doc. 36, Exh. E, p.

22   55; Doc. 43, Exh. B, p. 41.)   Dr. Segerstrom noted Plaintiff's complaints of pain, burning,

23   photophobia, and blurred vision.  The report Dr. Segerstrom used prompted a determination whether

24   there was apparent injury, and he circled "possibly."  On examination, Dr. Segerstrom indicated that

25   Plaintiff had "no globe trauma," and inspections of Plaintiff's eyelids, conjunctiva, sclera, corneas,

26   and pupils were all normal.  (Doc. 36, Exh. E, p. 56.)  Nowhere in Dr. Segerstrom's report does he

27   indicate that any injury to Plaintiff's eyes was caused by laser exposure to a reasonable medical

28   probability; he noted only that laser keratitis was "possible."

As Dr. Segerstrom's treatment records indicate only "possible" injury, the undisputed examination results were noted to be normal, and the notation of laser keratitis was only "possible," this report does not constitute evidence that any eye injury suffered by Plaintiff was caused by laser exposure to a reasonable medical probability.  As set forth in *Jones v. Ortho Pharmaceutical Corp*., 163 Cal. App. 3d 396, 402 (1985), "[m]ere possibility alone is insufficient to establish a prima facie case."  Although Dr. Segerstrom noted "acute pain," this was a notation as to Plaintiff's subjective symptoms.  Viewing Dr. Segerstrom's report in the light most favorable to Plaintiff, it does not establish to a reasonable medical probability that Plaintiff's eye conditions were caused by laser exposure.

### c.   Dr. Moors' July 7, 2008, Report

At her deposition, Plaintiff testified that the first doctor who examined her at Eye-Q Vision Care was Dr. Moors, and he "could see that [her eyes] were burned . . . [and] attributed the injury to a laser." (Doc. 36, Exh. C, p. 59:9-12, 59:17-18.)  Defendant argues that Dr. Moors' report did not attribute any ocular injury to laser exposure, but rather only noted a history of laser exposure under the diagnosis section of his report.  Defendant contends that such a notation does not establish to a reasonable medical probability that any eye injury Plaintiff sustained was caused by laser exposure.

In response, Plaintiff essentially argues that Dr. Moors' medical report establishes causation because he noted a history of laser exposure, he ordered photographs, and he "mentioned" conjunctivitis "off the record."  (Doc. 43, 18:6-22; 19:7-22.)  Plaintiff asserts that he "clearly attributed the injury to the rugged industrial scanner." (Doc. 43, 18:9-10.)

Dr. Moors' report only notes a "Hx of laser exposure." (Doc. 36, Exh. F,) Even construing this report in the light most favorable to Plaintiff, the Court cannot conclude that a notation of a history of laser exposure establishes to a reasonable medical probability that any eye injury suffered by Plaintiff was caused by laser exposure.  Although Plaintiff maintains that Dr. Moors' report "clearly attributed" her eye injuries to a "rugged industrial scanner," his medical report belies this assertion.  The fact that Dr. Moors ordered photographs of Plaintiff's eyes likewise is not an opinion

1  as to causation of Plaintiff's eye injuries.  This report is insufficient evidence to establish to a

2  reasonable medical probability that Plaintiff's injuries were caused by laser exposure.

3                 **d.**      **Dr. Walker's Report**

4         Defendant asserts that Dr. Walker's report is devoid of evidence that any damage to Plaintiff's

5  eyes was caused to a reasonable medical probability by laser exposure.

6         Plaintiff contends that Dr. Walker "mention[ed] in his report that Plaintiff had trouble with

7  her exam due to photophobia," and this fact supports Plaintiff's claims of eye injury.  While Plaintiff

8  concedes that Dr. Walker did not appear to believe that the eye damage would be permanent,

9  Plaintiff claims Dr. Walker "acknowledges that there was damage, and attributes the injury to a

10  rugged industrial laser."

11         The contents of Dr. Walker's examination report are undisputed.  Dr. Walker indicated that

12  Plaintiff had "mild symptoms" with "no significant corneal involvement."  Dr. Walker noted that he

13  assured Plaintiff that there was "no permanent damage from barcode scanner is evidenced in either

14  eye."  Dr. Walker recorded that Plaintiff stated "she doesn't understand why MD is 'reluctant to tell

15  the truth about the laser damage.'"  Finally, the examination report also indicated that Plaintiff was

16  "very persistent that [her eye] irritation [was] from [a] laser.

17         Dr. Walker's examination report does *not* opine that any eye irritation or injury Plaintiff

18  suffered was caused by laser exposure.  Rather, Dr. Walker appears to take Plaintiff's theory that her

19  eye irritation was caused by laser exposure at face value, but nevertheless noted that the symptoms

20  were mild and there was no permanent damage.  He did not offer an opinion to a reasonable medical

21  probability that Plaintiff's eye irritation was in fact due to laser exposure.  Accordingly, Dr. Walker's

22  findings and report are insufficient to establish causation to a reasonable medical probability.

23                 **e.**      **Dr. Schall's Report**

24         Defendant asserts that Dr. Schall's report fails to establish to a reasonable medical probability

25  that laser exposure caused Plaintiff's symptoms.  Defendant concedes that Dr. Shall's report states

26  that Plaintiff's history of exposure to an industrial laser, chronic conjunctivitis, dry eye condition,

27  and photophobia are "related to the accident."  Defendant contends this opinion was qualified by

28  the admission in the next sentence of the report that "[i]t would be necessary to review records of

1    an eye doctor prior to the accident to determine if the irritation and dry eye condition were present

2    prior to the accident."  Defendant avers that because Dr. Schall could not determine whether

3    Plaintiff's symptoms predated the incident at Home Depot, he could not state to a reasonable medical

4    probability that her laser exposure caused her symptoms.

5        Plaintiff responds that Dr. Schall "clearly stated in his report he attributed the incident as to

6    being the cause of Plaintiff's dry eye condition.  This would be due to laser exposure."  (Doc. 43,

7    18:18-22.)  Plaintiff maintains that Dr. Schall "attribute[d] the Plaintiff's eye injury to a rugged

8    industrial laser."  (Doc. 43, 20:10-12.)

9        The contents of Dr. Schall's report are undisputed.  Dr. Schall's report noted that Plaintiff

10   presented to him with complaints of blurred vision, burning and pain in the eyes, light sensitivity,

11   and headache and provided as follows, in relevant part:

12   > The eyelids were clear.  The conjunctiva showed 1+ injection on both sides.  The
>    periorbital and lacrimal systems were normal.  The pupils were 4 mm, round, regular,
13   > equal, and reactive to light.  There was no afferent pupillary defect.  Corneal
>    sensation was intact.
14   > . . .

15   > The corneas were clear with slight inferior punctate staining indicating a mild dry eye
>    condition.  The anterior chambers were deep without cell or flare.  There was no
16   > evidence of cataract formation.

17   (Doc. 36, Exh. F, p. 113.)  Dr. Schall's report provides a diagnostic impression of the following

18   conditions:  history of eye exposure to industrial laser, chronic conjunctivitis, dry eye condition,

19   photophobia, and myopia, and he offered the following discussion of these conditions:

20   > Conditions 1-4 are related to the accident, but condition number five is
>    developmental in nature.  Fortunately, there is no loss of visual acuity as a result of
21   > this accident.  The patient does appear to have a chronic, ongoing redness and
>    dryness to both of her eyes.  It would be necessary to review records of an eye doctor
22   > prior to the accident to determine if the irritation and dry eye condition were present
>    prior to the accident.  I recommended to the patient to use eye protection and
23   > especially ultraviolet protection when out in the sun.  the only ongoing treatment
>    would be the use of Artificial Tears, which hopefully will control the symptoms of
24   > the dry eye condition.

25   > She would benefit from the use of corrective lenses particularly for driving as she is
>    nearsighted.  This is not a result of the accident.
26

27   > Only those symptoms of ophthalmologic significance, which I believe have been
>    involved in the injury of the patient, have been discussed in this report.  Regarding
>    the general health of the patient, she is advised to have an examination with her
28   > personal physician.

1  (Doc. 36, Exh. F, p. 114-15.)

2      Dr. Schall's statement that "[i]t would be necessary to review records of an eye doctor prior

3  to the accident to determine if the irritation and dry eye condition were present prior to the accident,"

4  indicates that the conditions could have pre-dated the accident.  In his way, Dr. Schall's opinion that

5  Plaintiff's eye conditions were "related to the accident" is equivocal and does not establish that they

6  were caused  to a reasonable medical probability by Plaintiff's laser exposure.  It is necessary that

7  an opinion as to causation be certain to the extent that it expresses a reasonable probability.  *Saelzler*

8  *v. Advanced Group 400*, 25 Cal. 4th 775-76 (2001).  As explained in *Jones*, "[a] possible cause only

9  becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more

10 likely than not that the injury was a result of its action.  This is the outer limit of inference upon

11 which an issue may be submitted to the jury."

12     Defendant contends that California courts have been unwilling to accept equivocal or

13 speculative expert testimony as rising to the level of a reasonable medical probability.  Specifically,

14 Defendant relies upon *Ochoa v. Pacific Gas & Electric, Co.*, 61 Cal. App. 4th 1480 (1998) where

15 the California Fifth District Appellate Court affirmed a trial court's entry of summary judgment

16 holding that testimony offered by the plaintiff's expert was insufficient because it was not expressed

17 "with any degree of medical certainty."  *Id.* at 1487.  In *Ochoa*, the plaintiff claimed that a gas leak

18 at her house caused her various respiratory conditions.  *Id.* at 1482.  Her expert, Dr. Reddy, testified

19 that because he knew of no other probable cause for her symptoms, he felt that a leak of some

20 unspecified gas was "probably" the culprit for the increase in the severity of her respiratory problems.

21 *Id.* at 1483-84, 1487.  The appellate court considered Dr. Reddy's testimony speculative and

22 insufficient to rebut definitive expert testimony offered by the defendant.  *Id.* at 1487.  Like the

23 expert testimony considered in *Ochoa*, by stating that it was necessary to determine whether

24 Plaintiff's eye conditions pre-dated the barcode scanner laser exposure, Dr. Schall's opinion was

25 rendered speculative and made room for other possible causes of Plaintiff's eye conditions, which

26 Dr. Schall neither discussed nor ruled out.

27     Without confirming whether the conditions pre-dated the accident – as Dr. Schall indicates

28 in his report is necessary – Dr. Schall's opinion that, exclusive of her myopia, Plaintiff's eye

conditions are "related to the accident" cannot establish causation to a medical probability. Proffering an expert opinion that there is some theoretical possibility the negligent act could have been a cause-in-fact of a particular injury is insufficient to establish causation. *Saelzler*, 25 Cal. 4th at 775-76 (expert testimony positing a "'mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant'"); *see also Leslie G. v. Perry & Associates*, 43 Cal. App. 4th 472, 487 (1996). Rather, the plaintiff "must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not the negligent act was a cause-in-fact of the plaintiff's injury." *Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003).

The fact that Plaintiff alleges she had no eye symptoms prior to the laser exposure is insufficient to rule out other conditions to a reasonable medical probability and does not sufficiently address Dr. Schall's query whether the conditions pre-dated the laser exposure. At most, Plaintiff's testimony regarding the timing of her symptoms only raises an inference that the laser exposure was a *possible* cause of her eye condition. Where symptoms could be caused by any of several factors, however, medical evidence is necessary. Moreover, an inference arising from lay testimony cannot supplant the requirement that causation in a personal injury action be proven by *medical* evidence.[18] Even drawing all reasonable inferences in Plaintiff's favor, Dr. Schall's opinion does not indicate that it is more likely than not that Plaintiff's eye conditions were caused by her exposure to the laser barcode scanner.

### f.      Temporal Proximity is Insufficient to Establish Causation

Defendant asserts that Plaintiff cannot establish a triable issue of fact as to causation through assertions that any laser exposure was immediately followed by the onset of eye symptomatology. (Doc. 34-1, 19:11-20:4.)   In her opposition, Plaintiff does not specifically address Defendant's

---

[18] The temporal relationship between the laser exposure and Plaintiff's allegations of symptoms is considered more fully below.

argument in this regard; she does, however, note that she experienced eye pain "immediately after incident." (Doc. 43, p. 28, ¶ 10.)

Expert testimony is required to establish causation where the matter involves issues that are "beyond the experience of laymen." *Jones*, 163 Cal. App. 3d at 461 ("in the absence of factual circumstances of probability understandable to a jury there must be some scientific testimony that can be interpreted as an inference of hypothetical probability before we can allow a jury to speculate upon the rights of citizens") (citations and internal quotation marks omitted).

For example, in *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 985 (C.D. Cal 1996), the plaintiff brought suit against various companies that produced fragrances asserting that the formaldehyde and aldehydes in the products caused her injuries including sinus inflammation, brain damage, deranged sense of smell, small airways disease, and multiple chemical sensitivity. The plaintiff argued that she did not need to prove causation by expert testimony because her "'sensation of pain immediately following each of her more than 16,000 exposures to fragrance products, including defendant's fragrance products, is sufficient to create a triable issue of material fact' as to causation.'" *Id.* at 988. The district court rejected this argument reasoning that accepting facts about temporal proximity between exposure and the plaintiff's symptoms would be tantamount to "adopt[ing] a 'common-sense,' lay interpretation of causation." *Id.* at 985. The court concluded that "[w]hatever 'common-sense' appeal of [a temporal connection] argument, it fails because California law clearly requires expert testimony on causation in a case like this," and any temporal proximity between exposure and the development of symptoms was insufficient to raise a triable issue of fact as to causation. *Id.* at 985-86.

Here, the cause of Plaintiff's ocular conditions, which include dry-eye syndrome, conjunctivitis, photophobia, and myopathy, is beyond the experience of a layperson. Therefore, Plaintiff cannot rely on her own testimony about her laser exposure and a temporal connection to the development of eye symptoms to assert an inference of causation from the totality of the circumstances. *See Cottle v. Super. Ct.*, 3 Cal. App. 4th 1367, 1385 (1992) (in a personal injury case, "causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite

1   expert testimony on causation").  Any temporal proximity between the exposure to the laser and the

2   development of eye symptoms is insufficient to raise a triable issue of fact as to causation.

3       **g.**  **Conclusion**

4      After consideration of the evidence submitted by Plaintiff to prove her eye conditions were

5   caused by laser barcode scanner exposure at Home Depot on June 19, 2008, and viewing that

6   evidence in a light most favorable to Plaintiff as the non-moving party, none of the evidence

7   establishes a nexus to a reasonable medical probability.  The evidence is insufficient to show medical

8   causation to the degree required by California law and does not provide an adequate basis for a jury

9   to decide the issue in Plaintiff's favor.

10     Accordingly, Plaintiff has not presented sufficient evidence of an essential element of her

11  claims for negligence and premise liability for which she bears the burden of proving at trial.  A

12  "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

13  renders all other facts immaterial" and entitles the moving party to summary judgment.  *Celotex*, 477

14  U.S. at 323.  In sum, Defendant is entitled to summary judgment.

15    **3.**  **Defendant Has Produced Expert Testimony that Negates A Medical Nexus**
         **Between Bar Code Scanner Laser Exposure and Plaintiff's Eye Conditions**
16

17     Although summary judgment for Defendant is warranted because Plaintiff has not submitted

18  adequate medical evidence to carry her burden of establishing causation for both of her claims, the

19  Court nonetheless considers Defendant's alternative argument that it has presented sufficient

20  evidence to negate the element of causation.

21     Defendant argues that the declaration and report of its expert, Dr. Reynard, negates that

22  Plaintiff's eye conditions were the result of laser exposure.  (Doc. 35-1, 20:7-21:17.)  Upon review

23  of Plaintiff's medical records, among other documents, Dr. Reynard opined that Plaintiff has Dry Eye

24  Syndrome and stated "[w]ith a high degree of medical certainty" that the condition was not caused

25  by exposure to light from a barcode scanner.  Dr. Reynard also opined "[w]ith every degree of

26  medical certainty, exposure to light from a bar code scanner did not cause [Plaintiff's] myopia."

27  Finally, Dr. Reynard provided the following opinion as to "Bar Code Eye Injury":

28

Eye injury cased by laser exposure is detected by the presence of thermal burns to structures of the eye. In the case of [Plaintiff], ocular examination by multiple examiners did not show evidence of thermal burn injury to the ocular structures. Specifically, there was no evidence of laser injury to the cornea, iris, lense, or retina of either eye. With a high degree of medical certainty, [Plaintiff] did not sustain laser injury from a bar code scanner to either eye.

Defendant asserts that as none of Plaintiff's evidence is sufficient to rebut Dr. Reynard's report and declaration, it is entitled to summary judgment.

Plaintiff objects to Dr. Reynard's report and declaration on the grounds that it is speculative, conclusory, and unreliable because Dr. Reynard did not examine Plaintiff in reaching his opinion. Plaintiff also argues that the reports of Drs. Segerstrom, Moors, Walker, and Schall rebut Dr. Reynard's report, particularly because there are *four* reports that establish her eye conditions were caused by exposure to a laser barcode scanner while Defendant only offers *one* opinion in support of its argument that Plaintiff's symptoms were not caused by exposure to light from a barcode scanner.

Plaintiff's objection to Dr. Reynard's opinion on the ground that he did not personally examine her eyes in reaching his opinion is without merit. The law contemplates expert testimony in the form of opinion when "specialized knowledge will assist the trier of fact . . . ." *See* Fed. R. Evid. 702. To that end, Federal Rule of Evidence 703 provides experts with "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, (1993). The fact that Dr. Reynard did not personally examine Plaintiff does not render his opinion unreliable or speculative.

Dr. Reynard's opinion was predicated on a review of the following documents: (1) the deposition of Plaintiff taken on June 30, 2011; (2) a letter from Plaintiff to Dr. Schall dated February 7, 2009; (3) medical records from Dr. Schall; (4) letter dated January 15, 2009, from Dr. Schall to Howard Hall, Plaintiff's former counsel; (5) medical records from Dr. Mike's Walk-In Clinic; (6) Eye-Q Vision Care records; (7) summary of incident on June 19, 2008, by Brenda Haines; (8) employee records; (9) Corcoran District Hospital records; (10) Mediscan Nursing Staffing records; (11) Walgreens Pharmacy records; (12) Maxim Employment Application; and (13) Board of Vocational Nursing and Psychiatric Technician's website profile of Plaintiff. (Doc. 36, Exh. A.)

Dr. Reynard set forth the factual and medical basis for his opinion (Doc. 36, Exh. A), and submitted a declaration stating that, "[w]ith a high degree of medical certainty, [Plaintiff] did not sustain laser injury from a bar code scanner to either eye" (Doc. 35-3, ¶ 4).  He also opined that, while Plaintiff  "does have a condition known as Dry Eye Syndrome . . . [which] manifests as eye irritation, eye redness, and light sensitivity (known as photophobia)" (Doc. 35-3, ¶ 5), to a "high degree of medical certainty, [Plaintiff's] dry eye condition was not caused by exposure to light from a bar code scanner"  (Doc. 35-3, ¶ 5).  Finally, in his declaration, Dr. Reynard opined that Plaintiff suffers from myopia, which accounts for her blurred or reduced vision." (Doc. 35-3, ¶ 6.)  However, Dr. Reynard maintains that this "condition is a refractive and natural condition that requires corrective lenses for improved clarity of vision"  (Doc. 35-3, ¶ 6), and he opined to "every degree of medical certainty" that "exposure to light from a bar code scanner did not cause myopia in [Plaintiff]." (Doc. 35-3, ¶ 6.)

As discussed above, Plaintiff has presented no evidence of causation to a reasonable medical probability.  As a result, Plaintiff has failed to present sufficient evidence to rebut Dr. Reynard's opinion and create a triable issue of fact as to causation.  Defendant is, therefore, entitled to summary judgment.

## V.   CONCLUSION AND ORDER

Plaintiff has failed to produce any evidence of causation to a reasonable medical probability that her exposure to a bar code scanner laser caused her eye conditions.  Moreover, Defendant has proffered evidence that negates the existence of a causative relationship between any bar code scanner exposure and Plaintiff's eye conditions, and Plaintiff has failed to rebut this evidence. Therefore, there is no triable issue of fact as to causation.  As such, Defendant is entitled to summary judgment.

///

///

///

///

///

Accordingly, it is HEREBY ORDERED that:

1.      Defendant's motion for summary judgment is GRANTED;

2.      Judgment shall be issued in favor of Defendant and against Plaintiff; and

3.      This case shall be administratively closed.

IT IS SO ORDERED.

**Dated:      April 4, 2012**                          /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE